UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LANTIGUEZ ALVARADO, Isaac,

                                 Petitioner,

-against-

BONDI, Pamela, in her official capacity as Attorney General, U.S. Department of Justice; NOEM, Kristi, in her official capacity as Secretary, U.S. Department of Homeland Security; FRANCIS, LaDeon, in his official capacity as Director, New York Field Office, U.S. Immigration and Customs Enforcement, U.S. Department of Homeland Security; and ARTETA, Paul, in his official capacity as Warden, Orange County Jail,

                                 Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _2/11/2026_

26 Civ. 768 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      Petitioner, Isaac Jesus Lantiguez Alvarado, a citizen of Venezuela, brings a petition for habeas corpus under 28 U.S.C. § 2241, seeking release from detention by Immigration and Customs Enforcement ("ICE"). *See* Pet. ¶¶ 1–3, 8, ECF No. 1. Lantiguez Alvarado states that on September 8, 2025, he was detained by the government without due process pending removal proceedings. *See* Pet. ¶¶ 17, 36. The government states that "[t]he facts of this case are not materially distinguishable" from a set of other recent decisions in this district granting relief, *see* Resp. Ltr. at 2, and contends that "the Court can decide this issue without further briefing or answer from the government," *id.* at 3. For the reasons stated below, the Petition is granted. The Court orders Lantiguez Alvarado's immediate release.[1]

---

[1] Having reviewed the Petition, the materials filed in support thereof, and the government's response, the Court finds that the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. 28 U.S.C. § 2243; *see also id.* (commanding courts to dispose of habeas petitions expeditiously, "as law and justice require"). The government does not contest any relevant facts. *Compare* Pet., *with* Resp. Ltr. at 1–3.

## BACKGROUND

Lantiguez Alvarado is a citizen of Venezuela who entered the United States in December 2023. Pet. ¶ 15. Shortly thereafter, the government detained him, initiated removal proceedings, and then released him on his own recognizance "in accordance with [8 U.S.C. § 1226]." *See* Order of Release, ECF No. 1-3; Pet. ¶ 16; Nielsen-Reagan Decl. ¶¶ 4–5, ECF No. 1-1. Lantiguez Alvarado then moved to New York City, where he "complied with his immigration requirements, including attending all immigration court hearings, updating his address with the immigration court, and filing [a] Form I-589, application for asylum, withholding of removal, and protection under the Convention Against Torture." Pet. ¶ 16; Nielsen-Reagan Decl. ¶¶ 7–8.

In March 2025, Lantiguez Alvarado was charged in the Western District of Texas with improper entry by a noncitizen under 8 U.S.C. § 1325(a)(1), and a warrant was issued authorizing his arrest. On August 26, 2025, more than a year and a half after he entered the United States, Lantiguez Alvarado was arrested while attending a "routine biometrics appointment" for his immigration case. His criminal case was then transferred to the Eastern District of New York. Pet. ¶ 17; Nielsen-Reagan Decl. ¶¶ 8–9; E.D.N.Y. Tr., ECF No. 4-1, at 13:10–16:10 (waiving venue). On September 5, he pleaded guilty to improper entry and was sentenced to a $75 fine. Pet. ¶ 17. Although Lantiguez Alvarado was not subject to a custodial sentence, he was remanded to the custody of the U.S. Marshals subject to a pending ICE detainer that had been lodged prior to his sentence. *See* E.D.N.Y. Tr. at 37:5–38:15. On September 8, Lantiguez Alvarado was transferred to ICE custody and moved to Orange County Jail, where he currently remains. Nielsen-Reagan Decl. ¶ 10. Lantiguez Alvarado contends that the government did not make a determination that he was a danger to the community or a flight risk such that detention was warranted when he was detained. *See generally* Pet. The government does not argue otherwise.

*See generally* Resp. Ltr. Moreover, although Lantiguez Alvarado has been detained for over five months, he was not afforded a bond hearing. Pet. ¶ 18.

Detention has "cause[d] significant harm to [Lantiguez Alvarado's] physical and mental health." Nielsen-Reagan Decl. ¶ 12. For example, while detained, Lantiguez Alvarado experienced symptoms indicating that he may need a tooth extracted, and despite having alerted jail staff of his condition, he was not seen by a dentist and "ended up having to remove the tooth on his own due to the lack of medical attention." *Id.* Lantiguez Alvarado's diagnosed mental disorders, including post-traumatic stress disorder and depression, have also worsened in detention. *See id.* ("[H]e reports frequent insomnia and flashbacks of his brother's murder in Venezuela because his detention is a constant reminder that he could be deported back to a country where his life would be in danger.").

## DISCUSSION

"Noncitizens are . . . entitled to challenge through habeas corpus the legality of their ongoing detention," including "the lawfulness of detention when it is first imposed." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citation omitted). In analyzing Lantiguez Alvarado's petition, the Court holds that (1) Lantiguez Alvardo is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A); and (2) because he is instead subject to discretionary detention under § 1226(a), his detention under the circumstances presented here violated his due process rights.[2] *See Cuy Comes. DeLeon*, No. 25 Civ. 9283, 2025 WL 3206491 (S.D.N.Y. Nov. 14, 2025); *see also Perez Agustin v. Joyce*, No. 25 Civ. 10122, 2025 WL 3564494, at *2 (S.D.N.Y. Dec. 12, 2025).

---

[2] Because the Court agrees that Lantiguez Alvarado's release is required because his due process rights were violated, the Court does not consider his other arguments. *See, e.g.*, Pet. ¶¶ 26–31.

3

I.      Basis of Detention

The government argues that Lantiguez Alvarado's detention is governed by 8 U.S.C. § 1225(b)(2(A), which requires mandatory detention for "an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." *See* Resp. at 2. Lantiguez Alvarado contends that he is currently held under 8 U.S.C. § 1226(a), which provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *See* Pet. ¶ 22.

The Court recognizes that some courts in this district have held that noncitizens like Lantiguez Alvarado are subject to mandatory detention under § 1225(b)(2)(A). *See, e.g.*, *Weng v. Genalo*, No. 25 Civ. 9595, 2026 WL 194248 (S.D.N.Y. Jan. 25, 2026); *Espinoza Lopez v. Noem.*, No. 26 Civ. 345, 2026 WL 266597 (S.D.N.Y. Feb. 2, 2026); *Chen v. Almodovar*, No. 25 Civ. 9670, 2026 WL 100761 (S.D.N.Y. Jan. 14, 2026). These cases posit that the Immigration and Nationality Act's ("INA") definitions of "applicant for admission," "admission," and "admitted" imply that any noncitizen who was not "lawfully admitted" upon entry into the United States is subject to mandatory detention. *See* 8 U.S.C. §§ 1101(a)(13)(A) (defining "admission" and "admitted"); 1225(a)(1) (defining "applicant for admission"); *Weng*, 2026 WL 194248, at *4–6; *Chen*, 2026 WL 100761, at *1–3.

The Court is not persuaded. First, the government's interpretation of § 1225(b)(2)(A) is inconsistent with the statutory structure. Both § 1225(b)(2)(A) and § 1226 authorize detention of inadmissible noncitizens pending removal proceedings. However, for a noncitizen to whom § 1226 applies, § 1226(c) requires that if that noncitizen is "inadmissible" for certain specified grounds, he or she "shall" be taken into custody. *See, e.g.*, 8 U.S.C. § 1226(c)(1)(A)

4

(inadmissibility by reason of committing an offense covered in § 1182(a)(2)); (c)(1)(D) (inadmissibility under § 1182(a)(3)(B)).  In 2025, Congress enacted another carve-out from the general rule of discretionary detention by adding § 1226(c)(1)(E), making detention mandatory for noncitizens who are inadmissible on certain grounds and are "charged with, [] arrested for, [] convicted of, admit[] having committed, or admit[] committing" certain criminal offenses.  *See* Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3, (2025).

Section 1226 contemplates, therefore, that there are certain inadmissible noncitizens to whom discretionary detention does apply.  Otherwise, these subsections would be unnecessary. *See Villegas ex rel. Guzman Andujar v. Francis*, No. 25 Civ. 9199, 2025 WL 3215597, at *4 (S.D.N.Y. Nov. 18, 2025); *J.U. v. Maldonado*, No. 25 Civ. 4836, 2025 WL 2772765, at *8 (E.D.N.Y. Sept. 29, 2025); *Duarte Escobar v. Perry*, No. 3:25 Civ. 758, 2025 WL 3006742, at *9–*10 (Oct. 27, 2025); *Hasan v. Crawford*, 800 F. Supp. 3d 641, 656 (E.D. Va. 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1258 (W.D. Wash. 2025).  But the government's proposed reading of § 1225(b)(2)(A) would render any inadmissible noncitizen automatically subject to discretionary detention, no matter where or when the noncitizen is apprehended.  *See J.G.O.*, 2025 WL 3040142, at *4.

Some cases have argued that the carve-out to discretionary detention made in § 1226(c)(1)(E) is not "redundant" because, at the time of its passing, it counteracted the "longstanding practice of prior Administrations" of treating certain noncitizens who had not yet been admitted as subject to discretionary detention.  *See, e.g.*, *Weng*, 2026 WL 194248, at *6; *Cabanas v. Bondi*¸ 2025 WL 3171331, at *6 (S.D. Tex. Nov. 13, 2025); *Chen v. Almodovar*, No. 25 Civ. 8350, 2025 WL 3484855, at *12 (S.D.N.Y. Dec. 4, 2025).  But this argument puts the proverbial cart before the horse.  That is, it rests on the assumption that Congress intended the

5

wording of §§ 1225 and 1226 to afford the Attorney General "discretion" to detain an individual under § 1226, even when that individual would otherwise be covered by § 1225. *See Cabanas*, 2025 WL 3171331 at *6 ("[T]his means only that Congress determined to narrow aspects of the discretion available to any Administration prioritizing removal proceedings toward § 1226"). That is not the case. Section 1225(b)(2)(A) does not provide that a noncitizen subject to its scope is detained pursuant to the Attorney General's discretion. To the contrary, it states that a covered noncitizen "shall" be detained. Nor does this argument—that Congress enacted § 1226(c)(1)(E) to correct the government's failure to properly apply § 1225(b)(2)(A)—explain why Congress chose not to amend § 1225 directly.

Moreover, courts are "deep[ly] reluctan[t] to interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Freytag v. C.I.R.*, 501 U.S. 868, 877 (1991) (citation omitted). Unlike the carve-out from discretionary detention that Congress enacted in the Laken Riley Act, *see Weng*, 2026 WL 194248, at *5, § 1226(c)(1)(A) *was* enacted contemporaneously with the detention framework that Congress set forth in §§ 1225 and 1226. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, 3580, 3585, (Sept. 30, 1996); *cf. Weng*, 2026 WL 194248, at *6 ("[T]he canon against superfluity . . . is pretty weak when applied to acts of Congress enacted, as here, at widely separate times." (cleaned up)). Therefore, the government cannot be heard to argue that, in crafting the exceptions to discretionary detention for certain "inadmissible" noncitizens under § 1226(c)(1)(A), Congress meant merely to clarify or counteract what it perceived to be an improper exercise of executive authority under § 1225(b)(2)(A). Rather, it is instead far more plausible that Congress intended for the detention of certain inadmissible noncitizens to be

governed by § 1226(a), and not by § 1225(b)(2)(A).  The government's proposed reading of § 1225(b)(2)(A) would have the Court ignore that directive.

The statutory context of §§ 1225 and 1226 also cuts against the government's reading. "Every part of § 1225 suggests that it applies to [those] who are arriving in the country." *J.G.O. v. Francis*, No. 25 Civ. 7233, 2025 WL 3040142, at *3 (S.D.N.Y. Oct. 28, 2025).  Section 1225's title refers to "Inspection by immigration officers" and "arriving aliens" and generally references arrival and inspection throughout.  Providing additional "contextual evidence," § 1225 lays out exclusions from § 1225(b)(2)(A)—namely, crewmen, stowaways, and other arriving noncitizens. *J.G.O.*, 2025 WL 3040142, at *3.  "Each class of people on that list includes somebody who is entering the country, not somebody who's already here; and though the list is one of exceptions, it's suggestive of the type of person who's meant to be covered." *Id.*  The next subsection in § 1225(b)(2)(A) describes special provisions applying to those "arriving from contiguous territory," which is a subset of arriving people. *Id.*

This interpretation also aligns with "[t]he distinction between [a noncitizen] who has effected an entry into the United States and one who has never entered [that] runs through immigration law," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  Skepticism of the government's stance is particularly warranted because, since IIRIRA's passage, the government has consistently adhered to the position that § 1226 applies to all those who have already entered and are residing in the United States,[3] and throughout this time, "Congress has revisited the [INA] and left" this "longstanding administrative construction . . . untouched." *Saxbe v. Bustos*, 419 U.S. 65, 74

---

[3] For example, roughly five months after IIRIRA's passage, the Immigration and Naturalization Service ("INS") and the Executive Office for Immigration Review ("EOIR") issued an interim rule stating that "inadmissible aliens, except arriving aliens, have available to them bond redetermination hearings before an immigration judge.  This procedure maintains the status quo regarding release decisions for aliens in proceedings."  Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997); *see* 8 C.F.R. § 1.2.

(1974); *see Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) ("When congress adopts a new law against the backdrop of a 'longstanding administrative construction,' the Court generally presumes the new provision works in harmony with what came before.").

This reading remains faithful to § 1225(b)(2)(A)'s text, which does not cover every noncitizen who is an "applicant for admission." Instead, as has been noted in several decisions in this district, it requires that the "applicant for admission" also be an "alien seeking admission." *See Goorakani v. Lyons*, 2025 WL 3632896, at *6–*8 (S.D.N.Y. Dec. 15, 2025); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 2048, 1061 (7th Cir. 2025) ("[T]he mandatory detention provision upon which [the government] rel[ies], limits its scope to an 'applicant for admission' who is 'seeking admission.'"). And although § 1225(a)(1) does define an "applicant for admission" as any noncitizen who has not been lawfully admitted, it does not define "seeking admission," and the plain meanings of these terms naturally diverge. *See Lopez Benitez*, 795 F. Supp. 3d 475, 484–85, 486–89 (S.D.N.Y. 2025) (concluding that a noncitizen "residing in the United States for more than two years" was not "seeking admission" "at the time of his arrest and detention"); *Villegas*, 2025 WL 3215597, at *3–*4. And "[c]ourts must give effect, if possible, to every clause and word of a statute." *Loughrin v. United States*, 573 U.S. 351, 358 (2014). As a result, this distinction suggests that § 1225(b)(2)(A) does not encompass all inadmissible noncitizens. *See J.G.O.*, 2025 WL 3040142, at *3 .

The Court is mindful that "[r]easonable minds can differ and often do—sometimes vehemently so—on difficult and important legal questions." *Goorakani*, 2025 WL 3632896, at *12. Acknowledging that this case, and the scores of others filed in this district like it, presents a "complicated question of law" demanding decision "under compressed timelines and with high stakes," *Chen*, 2026 WL 100761, at *14; *see Goorakani*, 2025 WL 3632896, at *12, the Court

nonetheless agrees with the substantial weight of authority and concludes that Lantiguez Alvarado is not subject to detention under 8 U.S.C. § 1225(b)(2)(A). *Cardenas*, 2025 WL 3215573, at *2; *see Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025); *Cuy Comes*, 2025 WL 3206491, at *2–3; *Barco Mercado v. Francis*, No. 25 Civ. 6582, 2025 WL 3295903, at *13–14 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *Castanon-Nava*, 161 F.4th 1061.

II.     Due Process Required for § 1226(a) Detention

"At the outset, the Court rejects [any] assertion that [Lantiguez Alvarado] is not entitled to due process under the Fifth Amendment and is instead limited only to the process provided by Congress." *Cuy Comes,* 2025 WL 3206491, at *4. Lantiguez Alvarado is not, as the government purported in *Gonzalez*, an "alien on the threshold of initial entry," Opp. Mem. at 11 (citation omitted),[4] but rather a noncitizen who had been residing inside the United States for over a year before his apprehension. Pet. ¶ 17; *see Gonzalez*, No. 25 Civ. 8250, 2025 WL 2961626, at *4 (S.D.N.Y. Oct. 19, 2025). As the Supreme Court has unambiguously held, "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (citation omitted); *Velasco Lopez*, 978 F.3d at 850.

The circumstances of Lantiguez Alvarado's detention differ slightly from those in *Cuy Comes*, 2025 WL 3206491, at *5, *Gonzalez*, 2025 WL 2961626, at *3, and *Perez Agustin*, 2025 WL 3564494, at *3. In those cases, the petitioners' detentions stemmed from arrests that were made without a judicial warrant and without notice to petitioners. Here, Lantiguez Alvarado's initial arrest was effected pursuant to a duly authorized warrant from the Western District of Texas,

---

[4] The Court will refer to the response memorandum submitted in *Gonzalez v. Francis*, which Respondents expressly incorporate by reference, *see* Resp. at 3 n.3, as "Opp. Mem." in this order. *See* Opp. Mem., ECF No. 18 in *Gonzalez v. Francis et al.*, No. 25 Civ. 8250, 2025 WL 2961626 (S.D.N.Y. Oct. 19, 2025).

and ICE detained him following the conclusion of his Eastern District of New York proceedings. Nonetheless, the Court concludes that the circumstances of Lantiguez Alvarado's detention violate the constitutional requirements of due process, and notes that the government does not argue that there is any basis to distinguish the circumstances of Lantiguez Alvarado's detention from those in *Gonzalez*, *Cuy Comes*, or a score of other cases recently filed in this district. *See* Resp. Ltr. at 2–3.

To assess the adequacy of due process in the context of civil immigration enforcement, the Court applies the *Mathews v. Eldridge* balancing test. *See Lopez Benitez*, 795 F. Supp. 3d at 492; *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528, 2025 WL 1927931, at *2 (S.D.N.Y. July 13, 2025); *Valdez v. Joyce*, No. 25 Civ. 4627, 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025); *Hyppolite v. Noem*, No. 25 Civ. 4304, 2025 WL 2829511, at *13 (E.D.N.Y. Oct. 6, 2025). This test requires the Court to determine: "(1) the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; and (3) the [g]overnment's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Lopez Benitez*, 795 F. Supp. at 492. The Court assesses these factors mindful of the fact that Lantiguez Alvarado is detained pursuant to § 1226(a), not § 1225(b)(2)(A).

That private interest implicated in this case is "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).[5] "Case after case instructs [the Court] that in this country liberty is the norm and detention 'is the carefully limited exception.'" *Id.* (citation omitted). The deprivation of liberty while incarcerated is, "on any calculus, substantial." *Id.* Individuals in

---

[5] Detention under these circumstances has also affected Lantiguez Alvarado's ability to obtain adequate medical care, *see supra* at 2–3, and to prepare his immigration case, *see* Nielsen-Reagan Decl. ¶ 12.

10

detention cannot "maintain employment or see [] family or friends or others outside normal visiting hours," and have limited, if any, access to the outside world. *Id.* at 851–52.

As to the second *Mathews* factor, the risk of erroneous deprivation of that interest is particularly high in cases like these, where nothing suggests that the government undertook any individualized review of Lantiguez Alvarado's circumstances, or of the need to exercise its discretion under § 1226(a), prior to detaining him. *See Lopez Benitez*, 795 F. Supp. 3d at 495. Indeed, the government previously released Lantiguez Alvarado on his own recognizance under § 1226(a), *see* Order of Release, indicating that the last time it actually conducted an individual assessment of Lantiguez Alvarado's case, it had determined that he was not "a flight risk or a danger to his community." *Lopez Benitez*, 795 F. Supp. 3d at 495.

Last, the government's interest. Although § 1226(a) "undoubtedly vests broad authority [in the government] to arrest and detain noncitizens," that authority is predicated on the government's exercise of discretion. *Id.* at 492 ("At a minimum, however, § 1226(a) requires a valid exercise of DHS's discretion."). The exercise of that discretion "is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Velasco Lopez*, 978 F.3d at 854; *Zadvydas*, 533 U.S. at 690. Here, as in *Cuy Comes*, 2025 WL 3206491, at *5, *Gonzalez*, 2025 WL 2961626, at *3, and *Perez Agustin*, 2025 WL 3564494, at *3, the government does not argue that Lantiguez Alvarado's detention was, or is, related to the purpose of ensuring his appearance at future immigration proceedings, or preventing danger to the community. *See* Nielsen-Reagan Decl. ¶ 7. The government does not contend that Lantiguez Alvarado has a criminal record (aside from his conviction for unlawful entry) or failed to attend his immigration appointments. *See* Pet. ¶¶ 16, 22 n.2; *see generally* Resp. Ltr. The Court finds that there is no valid exercise of discretion

where "there is nothing to suggest that [the government] exercised any discretion *at all* in detaining [Lantiguez Alvarado,] . . . in contravention of the basic procedural requirements of § 1226(a)." *Cuy Comes*, 2025 WL 3206491, at *5 (quoting *Lopez Benitez*, 795 F. Supp. 3d at 494–95).

For the reasons explained in *Cuy Comes*, 2025 WL 3206491, at *4–5, *Gonzalez*, 2025 WL 2961626, at *3, and *Lopez Benitez*, 795 F. Supp. 3d at 492–96, among other cases, the Court concludes that Lantiguez Alvarado's ongoing detention violates his due process rights. *Lopez Benitez*, 795 F. Supp. 3d at 498 (quoting *Valdez*, 2025 WL 1707737, at *4). Accordingly, the only appropriate remedy is immediate release. *See* Pet. ¶ 25; *Crespo Tacuri v. Genalo*, No. 25 Civ. 6896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026).[6]

## CONCLUSION

For the reasons stated above, the Petition, ECF No. 1, is GRANTED. Respondents are ORDERED to immediately release Lantiguez Alvarado from government custody.

Additionally, the government must brief its authority, if any consistent with this Order, to (1) re-detain Lantiguez Alvarado without a valid exercise of discretion; (2) deny bond to Lantiguez Alvarado in any subsequent proceeding on the ground that he must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) absent a change in relevant circumstances; (3) invoke the automatic stay provision at 8 C.F.R. § 1003.19(i)(2) in the event that Lantiguez Alvarado is granted bond; or (4) impose additional conditions of release or burdens on Lantiguez Alvarado's liberty. If, instead, the government confirms that it will take none of those steps with respect to Lantiguez Alvarado without prior notice of at least one week provided to him and the Court, it need not file such

---

[6] Lantiguez Alvarado is excused from exhausting his administrative remedies because he has raised "a substantial constitutional question" regarding his detention procedures. *Beharry v. Ashcroft*, 329 F. 3d 51, 62 (2d Cir. 2003); *see Chipantiza-Sisalema*, 2025 WL 1927931, at *3; *Cuy Comes*, 2025 WL 3206491, at *6; *Gonzalez*, 2025 WL 2961626, at *5.

briefing. *See Quispe-Sulcaray v. Noem et al.*, No. 25 Civ. 9908, 2025 WL 3501207, at *2 (S.D.N.Y. Dec. 7, 2025); *Perez Agustin*, 2025 WL 3564494, at *4.

By **February 13, 2026,** Respondents shall certify compliance with this Order by a public filing on the docket.

SO ORDERED.

Dated: February 11, 2026
New York, New York

_____
ANALISA TORRES
United States District Judge